In the Matter of the COUNTY OF RENSSELAER, Appellant, *v.* CAPITAL DISTRICT TRANSPORTATION AUTHORITY, Respondent.

Third Department, November 5, 1973.

*Marvin I. Honig, County Attorney (Thomas J. O'Connor, Jr., of counsel)*, for appellant.

*William J. Schoonmaker* for respondent.

COOKE, J. This is an appeal from a judgment of the Supreme Court at Special Term, entered October 16, 1972 in Rensselaer County, which denied petitioner's motion, in a proceeding pursuant to article 78 of the CPLR for an injunction *pendente lite* and granted respondent's cross motion to dismiss the proceedings herein.

The facts are not in dispute. Pursuant to its Action Plan, respondent Capital District Transportation Authority (CDTA), a public benefit corporation created under section 2 of chapter 460 of the Laws of 1970, acquired the assets of several privately owned bus companies within its district. On August 29, 1972, five of the nine members of the respondent's Board of Directors met and unanimously adopted a resolution modifying the services provided by replacing the facilities and services of the former Troy Fifth Avenue Bus Company with those of the former United Traction Company and by discontinuing certain other services. The 35-cent fare, which had previously existed on the United Traction Company line, was continued and extended to the Troy Fifth Avenue Bus Company line which had maintained a 25-cent fare. Petitioner sought to enjoin the implementation of respondent's resolution, arguing that

respondent had failed to comply with the applicable provisions of the Transportation Law and the Transportation Corporations Law; that respondent had failed to obtain the consent of the Rensselaer County Legislature as required by section 1305 of the Public Authorities Law; and that respondent had failed to provide notice and public hearings as required by subdivision 3 of section 1307 of the Public Authorities Law.

Preliminarily, an issue requiring resolution is the appropriateness of an article 78 proceeding to obtain review of respondent's legislative action in fixing fares and to restrain threatened administrative action. The proper remedy in these circumstances is a declaratory judgment establishing the rights of the parties (cf. *Matter of Lakeland Water Dist.* v. *Onondaga County Water Auth.*, 24 N Y 2d 400, 407; *People ex rel. Bender* v. *Milliken*, 185 N. Y. 35, 39). This, however, does not compel dismissal of the proceeding for, pursuant to subdivision (c) of CPLR 103, we can regard the instant proceeding as one for a judgment declaring respondent's resolution violative of the relevant provisions of the Transportation Law, the Transportation Corporations Law and the Public Authorities Law (see *Matter of King Road Materials* v. *Town Bd. of Town of Rotterdam*, 37 A D 2d 357, 358–359, affd. 32 N Y 2d 890).

Turning to petitioner's arguments, it is an established maxim that insofar as a general law is inconsistent with a special law, the latter is controlling (*Reinhart* v. *Troy Parking Auth.*, 36 A D 2d 654; cf. Transportation Corporations Law, § 5). In the instant case, the provisions of the Public Authorities Law (§§ 1305, 1307) are inconsistent with the provisions of the Transportation Corporations Law (§ 61) with regard to the procedures for the alteration of existing bus routes and, therefore, the relevant sections of the latter are inapplicable. Likewise, the provisions of the Transportation Law (§ 142, subds. 11 and 15; §§ 146 and 147) are inconsistent with the provisions of the Public Authorities Law (§§ 1305, 1307), insofar as the former require the respondent to obtain the approval of the Commissioner of Transportation for changes in fares or routes, and are also inapplicable (*Western N. Y. Motor Lines* v. *Rochester-Genessee Regional Transp. Auth.*, 72 Misc 2d 712; Public Authorities Law, § 1323).

With regard to the applicability of section 1305 of the Public Authorities Law, the statutory scheme contemplates approval by the County Legislature of any alterations in existing services, the Action Plan to provide the county with notice of such proposed alterations. However, mere scheduling changes are not a matter for approval by the Legislature (Public Authorities

Law, § 1307, subd. 4). The Action Plan herein did not notify the county of any alterations in existing services and the petition, alleging as it does only that the respondent is threatening to cut bus services, is insufficient to support declaratory relief for failure to comply with section 1305 of the Public Authorities Law.

Finally, we agree with petitioner's contention that a public hearing was required prior to the implementation of the fare schedule adopted by the respondent's resolution. Subdivision 3 of section 1307 of the Public Authorities Law provides, in part, that: "Any such fares * * * for the transportation of passengers shall be established or *changed* only if approved by a resolution of the authority adopted by not less than a majority of the whole number of members of the authority then in office and only after a public hearing, provided however, that fares * * * *on any transportation facility* which are in effect · * * * *at the time that operation of such transportation facility is commenced by the authority* * * * may be continued in effect without such a hearing." (Emphasis supplied.) "Transportation facility" is defined, in pertinent part, by subdivision 23 of section 1301 to mean any omnibus facility and any person, firm, partnership, association or corporation which owns, leases or operates any such facility.

It is clear from a reading of the statute, in the context of this case, that the language "such transportation facility" refers to the predecessors of the CDTA (United Traction Company and Troy Fifth Avenue Bus Co. Inc.) whose operations were commenced by the authority. The argument that only the operations of the former United Traction Company were commenced by the authority is not persuasive as the same routes as existed on the former Troy Fifth Avenue Bus Company line were continued, albeit with different buses. Thus, although the pre-existing fares on each line could be continued in effect without a hearing, the resolution in question requires patrons traveling the old routes of the latter line to pay an additional 10-cent fare over the former scale. No amount of semantic obfuscation can disguise the fact that this is a change in the fare previously in effect and therefore a public hearing is required prior to its implementation. (Public Authorities Law, § 1307, subd. 3.)

The judgment should be reversed, on the law, without costs, and the judgment directed to be entered in favor of petitioner: (1) declaring that respondent's actions in fixing fares over the routes of the former Troy Fifth Avenue Bus line were in violation of subdivision 3 of section 1307 of the Public Authorities Law; and (2) enjoining respondent, after 30 days from entry

of the order hereon, from charging fares over routes of the former Troy Fifth Avenue Bus line in excess of that charged prior to the commencement of operation of such transportation facility by respondent unless and until a public hearing as provided by said section is conducted, together with such other steps as may be required by law.

GREENBLOTT, MAIN and REYNOLDS, JJ., concur; HERLIHY, P. J., concurs in the result.

Judgment reversed, on the law, without costs, and judgment directed to be entered in favor of petitioner: (1) declaring that respondent's actions in fixing fares over the routes of the former Troy Fifth Avenue Bus line were in violation of subdivision 3 of section 1307 of the Public Authorities Law; and (2) enjoining respondent, after 30 days from entry of the order hereon, from charging fares over routes of the former Troy Fifth Avenue Bus line in excess of that charged prior to the commencement of operation of such transportation facility by respondent unless and until a public hearing as provided by said section is conducted, together with such other steps as may be required by law.