2011 VT 13

**STATE of Vermont v. Aaron RUTTER**

[15 A.3d 132]

No. 10-092

¶ 1. January 31, 2011. Defendant appeals his conviction for second-offense driving while under the influence (DUI), arguing that the district court erred in denying his motion to suppress. Defendant claims that the arresting officer lacked the necessary reasonable suspicion of wrongdoing to support a stop of defendant's motor vehicle, and that the alleged traffic violation was merely a pretext for the stop. We affirm.

¶ 2. At 2:00 a.m. on March 5, 2009, a Brattleboro police officer was parked on Main Street three-quarters of a block north of the intersection with Elliot Street. At the time, the intersection was controlled by a flashing light. From this vantage point, the officer observed defendant's car approach from Elliot Street and stop at the intersection. The officer then heard defendant's tires squealing

and the engine revving as defendant turned left onto Main Street towards the officer. The officer activated his blue lights and stopped defendant's car. Once stopped, the officer made additional observations of defendant, which led to a charge of second-offense DUI. The officer also cited defendant for violating 23 V.S.A. § 1063, which provides: "No person shall move a vehicle which is stopped, standing or parked unless the movement can be made with reasonable safety."

¶ 3. Defendant filed a motion to suppress in the DUI case. Defendant argued that the officer lacked a reasonable suspicion of wrongdoing to stop his car, and that the officer used the traffic infraction as a pretext because he knew defendant had been consuming alcohol. Defendant requested a hearing on the ground that the facts were highly contested.

¶ 4. The court held a hearing on the motion. Primarily, the hearing involved a factual dispute about whether defendant squealed his tires. The officer testified that while on patrol he watched defendant's car make a full stop at the intersection and then, as he watched the car turn, he heard a loud screeching noise and defendant's engine revving. The officer explained that he stopped defendant because he was concerned about impairment, and suspected that defendant had committed a traffic violation by negligently operating his vehicle. On cross-examination, the officer testified that the screeching sound could have been for as short as one second. The officer's vehicle camera was activated when he turned on his blue lights, and the stop itself was recorded. The video was admitted at the suppression hearing. It reveals, and the officer so testified, that after conducting the stop, the officer approached defendant's car, and immediately questioned defendant as to why he felt the need to "peel out." Defendant testified on his own behalf. He admitted to having four drinks at a bar that evening, but denied peeling out

of the intersection. He instead claimed that his tires slipped a little on some gravel as he was turning. In support of defendant's theory that he did not squeal his tires, defendant's father testified that he had purchased the vehicle defendant was driving, and that based on his own experience and experiments driving the vehicle, he opined that the car was incapable of spinning its tires or peeling out.

¶ 5. At the end of the hearing, the court made findings on the record. The court credited the officer's testimony over defendant's and found that as defendant went through the intersection he screeched his tires and revved his engine. The court also found that at the time of the incident the roadway was dry, salt-stained and clear of ice and snow. The court concluded that the officer had a reasonable suspicion that defendant had committed a motor vehicle infraction. Defendant moved for permission to take an interlocutory appeal. The court denied the motion. Defendant entered a conditional guilty plea, reserving the right to appeal the denial of his motion to suppress. Defendant now appeals that order.

¶ 6. Our review of a denial of a motion to suppress involves a mixed question of fact and law. *State v. Simoneau*, 2003 VT 83, ¶ 14, 176 Vt. 15, 833 A.2d 1280. We apply a deferential standard of review to the trial court's factual findings and will affirm those findings if supported by the evidence. *State v. Lawrence*, 2003 VT 68, ¶ 9, 175 Vt. 600, 834 A.2d 10 (mem.). "The question of whether the facts as found met the proper standard to justify a stop is one of law." *Simoneau*, 2003 VT 83, ¶ 14.

¶ 7. On appeal, defendant does not challenge the trial court's factual findings. Instead, defendant argues that the court erred in denying the motion to suppress because (1) a transient squealing of tires is insufficient to violate 23 V.S.A. § 1063, and without this basis the stop was an unreasonable seizure under the Fourth

Amendment and Article 11 of the Vermont Constitution; and (2) the traffic violation for squealing his tires was merely a pretext for stopping defendant's car.

¶ 8. An investigatory stop is warranted when a police officer has a reasonable and articulable suspicion of illegal activity. *Simoneau*, 2003 VT 83, ¶ 14. This means there must be "more than an unparticularized suspicion or hunch of criminal activity, but . . . considerably less than proof of wrongdoing by a preponderance of the evidence." *Id.* "Reasonable and articulable suspicions of motor-vehicle violations are sufficient to justify traffic stops." *State v. Harris*, 2009 VT 73, ¶ 3, 186 Vt. 225, 980 A.2d 785.

¶ 9. Defendant argues that the officer was not justified in stopping his car because a brief squealing of tires is insufficient to support a suspicion of a motor vehicle infraction. Defendant contends that without reasonable suspicion the stop violated his rights under the Fourth Amendment and Article 11 of the Vermont Constitution.

¶ 10. We conclude that the facts as found were sufficient for the officer to reasonably suspect that defendant violated 23 V.S.A. § 1063, which states that "No person shall move a vehicle which is stopped, standing or parked unless the movement can be made with reasonable safety." See *State v. Thibault*, 152 Vt. 91, 92, 564 A.2d 603, 603 (1989) (holding that when a driver squeals tires while pulling out, this indicates lack of control and raises a concern about reasonable safety). In so holding, we need not decide whether defendant *actually* violated 23 V.S.A. § 1063. See *State v. Thompson*, 175 Vt. 470, 471, 816 A.2d 550, 552 (2002) (mem.) (explaining that stop of vehicle was warranted where reasonable possibility that traffic offense was committed, but it is not required to demonstrate that traffic offense actually occurred). The relevant question is whether the officer had a reasonable basis to *suspect* that a motor

vehicle violation was taking place, and the facts here provide that basis. The court found the officer's testimony credible that defendant screeched his tires and revved his engine as he proceeded from a stop and turned the corner. The court further found that the road was dry and clear of snow and ice at the time. Thus, the officer could conclude that the squealing of tires was intentional, and it was reasonable for the officer to suspect that defendant did not have reasonable control of his vehicle when the squealing of tires occurred as defendant moved from a stop and turned through the intersection. See *Thibault*, 152 Vt. at 92, 564 A.2d at 603 (interpreting § 1063 to require individuals to move their vehicles with reasonable safety even when not moving from a dead stop and noting that squealing tires indicates lack of such control).

¶ 11. Our decision does not, as defendant contends, create a bright-line rule that a "transient squeal" by itself always provides reasonable suspicion to suspect a violation of 23 V.S.A. § 1063 and therefore will always justify a traffic stop. Evaluating whether there is reasonable suspicion in a particular case depends on the totality of the circumstances. *State v. Crandall*, 162 Vt. 66, 70, 644 A.2d 320, 323 (1994). In some cases, the squealing of tires may not implicate § 1063 because the squealing is unconnected from the car's movement from a "stopped, standing or parked" position. In addition, there may be obvious and wholly innocent reasons for a person's tires to spin, such as weather or road conditions, which would negate any suspicion that the driver was not proceeding "with reasonable safety." 23 V.S.A. § 1063; see *Thibault*, 152 Vt. at 92, 564 A.2d at 603 (noting that spinning tires is an indication that driver not in control of his vehicle). In any event, neither of these reasons existed in this case. Defendant repeatedly claims that tires slipping or screeching is an "innocent winter occurrence," and every "driver

loses traction transiently in winter driving conditions which sometimes causes a vehicle to squeal." The trial court, however, rejected the notion that road conditions contributed to or caused defendant's tires to squeal, and defendant did not challenge the trial court's findings on appeal. In addition, the officer's testimony indicates that the revving and squealing happened as defendant moved from a stopped position. Therefore, under the totality of the circumstances, the officer had a reasonable suspicion in this case that the "peeling out" was caused by defendant proceeding from a stop without reasonable safety in violation of the statute.

¶ 12. The cases defendant cites from other jurisdictions do not alter our analysis. In the most analogous case, *Donaldson v. State*, the court considered whether there was reasonable suspicion to support a stop where the officer testified that the defendant pulled out of a parking lot with his tires squealing. 803 So. 2d 856 (Fla. Dist. Ct. App. 2002). The state argued that the stop was justified because the officer had a reasonable basis to suspect that the defendant had violated a section of the motor vehicle code, very similar to § 1063, which states: " 'No person shall start a vehicle which is stopped, standing, or parked, unless and until such movement can be made with reasonable safety.' " *Id.* at 859 (quoting Fla. Stat. § 316.154 (1999)). The court concluded that there was no reasonable suspicion because the officer did not see the defendant's vehicle in a stopped position. *Id.* Therefore, the court concluded that there was no basis to suspect a violation of the statute.

¶ 13. In contrast, in this case, the officer did observe defendant stop at the intersection, and then proceed through the turn, with his tires spinning and his engine revving. That the screeching and revving sounds were not exactly simultaneous with the moment the car began to move from a dead stop does not negate the officer's suspicion of a violation. The peeling out and revving engine occurred as part of defendant's movement of starting his vehicle from a stopped position. This provided a sufficient basis to suspect that defendant started his vehicle from a stopped position without reasonable safety in violation of § 1063.

¶ 14. Some of the cases from other jurisdictions relied on by defendant, while similar factually, are not persuasive because the conduct occurred in states that do not have statutes analogous to § 1063. For example, in *People v. Simmons*, 395 N.Y.S.2d 188, 189-90 (App. Div. 1977), the appellate court concluded that a squealing of tires was insufficient to suspect defendant of erratic driving and therefore could not provide a reasonable suspicion of wrongdoing to justify a stop. See also *State v. Mills*, No. C1-96-2516, 1997 WL 435893, at *2 (Minn. Ct. App. Aug. 5, 1997) (affirming trial court's conclusion that defendant's spinning of tires did not provide reasonable grounds to suspect violation of ordinance prohibiting exhibition driving); *State v. Pepin*, 920 A.2d 1209, 1212 (N.H. 2007) (holding that squeal of tires did not justify traffic stop for violation of road-racing statute or suspicion of DUI); *Singleton v. State*, 91 S.W.3d 342, 347-48 (Tex. Ct. App. 2002) (holding that squealing tires while turning does not create a reasonable suspicion of violation of acceleration statute, but of safe-turning statute).

¶ 15. Next, we turn to defendant's pretext argument. Defendant claims that allowing police to stop vehicles for suspicion of violating "trivial" sections of the motor vehicle code creates the opportunity for police to use these violations as merely a pretext for randomly stopping vehicles to check for DUI.[*] We find no merit to this argument. Generally, there is no pretext

_____

[*] The State argues that this argument was not properly preserved for appeal. See *State v. Brillon*, 2010 VT 25, ¶¶ 6-7,

if a stop is supported by reasonable suspicion of wrongdoing. While not explicitly adopting the general maxim under the Vermont Constitution, we have in the past reiterated the federal rule that an officer's subjective intent for stopping a defendant's car is not relevant as long as there is an objectively reasonable basis for the stop. *State v. Fletcher*, 2010 VT 27, ¶ 9, 187 Vt. 632, 996 A.2d 213 (mem.). Defendant invites us to establish a different rule under the Vermont Constitution; arguing that an officer's subjective unsupported motive for a traffic stop should invalidate an otherwise reasonable stop to discourage the use of traffic stops based on pretext.

¶ 16. We conclude that the protections of Article 11 do not extend to prohibiting law enforcement officers from stopping motor vehicles where there is an objectively reasonable suspicion that a motor vehicle violation has occurred, even if in a particular situation these infractions may appear "trivial" or the officer's motivation is suspect. It is the Legislature's prerogative to decide what types of driving behavior should be prohibited under the motor vehicle code. Once adopted, it is up to law enforcement to ensure compliance with those laws. To enforce these statutes, police must be empowered to investigate violations, however minor, and whatever the officer's subjective motive for the stop. There was an objectively reasonable basis for the stop in this case; therefore, defendant's argument of pretext lacks merit.

*Affirmed.*

---

187 Vt. 444, 995 A.2d 557 (holding that defendant had failed to preserve state constitutional argument where the provision was cited without any explanation or supporting authority). Because we reject the claim on the merits, we need not address this question.